IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| REALTIME DATA, LLC D/B/A IXO,<br>        Plaintiff,<br><br>        v.<br><br>THOMSON REUTERS CORPORATION,<br>BLOOMBERG, L.P., FACTSET RESEARCH<br>SYSTEMS INC., INTERACTIVE DATA<br>CORPORATION, and PENSON<br>WORLDWIDE, INC.,<br>        Defendants. | Civil Action No. 6:09-cv-333-LED<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. 1404(a)**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................1

II.     BACKGROUND ...............................................................................................3

        A.      The Plaintiff and Majority of Defendants are New York Companies ......................3

        B.      The Majority of Defendants in the Additional Texas Actions  are also New York
                Companies ...................................................................................................4

        C.      Nearly All of the Defendants' Witnesses and Evidence Are Located in  New York 5

        D.      Realtime's Witnesses and Documents are Located in New York ...........................5

        E.      The Packeteer Action Has Not Centered on the Overlapping Patents.....................6

        F.      The New York Action ...............................................................................6

III.    ARGUMENT ...................................................................................................6

        A.      Standard for Transferring Cases ......................................................................6

        B.      This Case "Could Have Been Filed" in  the Southern District of New York ...........8

        C.      *All* of the Private Interest Factors  Weigh Heavily in Favor of Transfer .................8

                1.      The Relative Ease of Access to Sources of Proof  Weighs in Favor of
                        Transfer .............................................................................................8

                2.      The Availability of Compulsory Process to Secure  the Attendance of
                        Witnesses Weighs in Favor of Transfer ....................................................10

                3.      The Cost of Attendance for Willing  Witnesses Weighs in Favor of
                        Transfer ............................................................................................11

                4.      All Other Practical Problems that Make Trial of a Case  Easy, Expeditious
                        and Inexpensive also Weigh in Favor of Transfer ......................................13

        D.      On Balance, the Public Interest Factors Weigh in Favor of Transfer ......................14

                1.      The Local Interest in Having Localized  Interests Decided at Home Favors
                        Transfer ............................................................................................14

                2.      The Remaining Public Interest Factors Are Neutral ...................................15

CONCLUSION ........................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*,
  512 F. Supp. 1039, 1044 (S.D.Tex 2007) ........................................................................ 9, 11

*Aten Int'l Co. v. Emine Tech. Co.*,
  2:08-CV 253, 2009 U.S. Dist. LEXIS 53764, at *34 (E.D. Tex. June 25, 2009) ...................... 14

*Fifth Generation Computer Corp. v. International Business Machines Corp.*,
  No. 9:08-CV-205, 2009 U.S. Dist. LEXIS 12502, at *2 (E.D. Tex. Feb. 17, 2009) ........... 13, 15

*Fujitsu Limited v. Tellabs, Inc.*,
  6:08 CV 22 Patent Case, 2009 U.S. Dist. LEXIS 58288, *4 (E.D.Tex. July 7, 2009) .......... 7, 14

*Houston Trial Reports, Inc. v. LRP Pubis., Inc.*,
  85 F. Supp. 2d 663, 668 (S.D.Tex. 1999) ........................................................................ 8, 13

*In re Genentech*,
  566 F.3d 1338, 1345 (Fed. Cir. 2009) .............................................................................. 11, 12

*In re Volkswagen of Am., Inc.*,
  371 F.3d 201, 203 (5th Cir. 2004) .................................................................................... 7, 11

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304, 318 (5th Cir. 2008) ............................................................................................ 1

*In re: Horeshoe Entm't*,
  337 F.3d 429, 434 (5th Cir. 2003) .......................................................................................... 13

## Statutes

28 U.S.C. § 1391(c) ...................................................................................................................... 8

28 U.S.C. 1404(a) ........................................................................................................................ 1

Thomson Reuters Corporation ("Thomson"); Bloomberg, L.P. ("Bloomberg"); Factset Research Systems Inc. ("Factset"); and Interactive Data Corporation ("IDCO") (collectively, "Defendants") respectfully submit this Motion to Transfer Venue to the United States District Court for the Southern District of New York pursuant to 28 U.S.C § 1404(a).  While the two remaining defendants – Penson Worldwide, Inc. ("Penson") and Nexa Technologies, Inc. ("Nexa") – are not joining in this motion, they do not oppose it and do not object to this case being transferred to the Southern District of New York.

## I.    <u>INTRODUCTION</u>

"The only connection between this case and the Eastern District of Texas is plaintiff['s] choice to file [here]."  <u>In re Volkswagen of Am., Inc.</u>, 545 F.3d 304, 318 (5th Cir. 2008) ("<u>In re Volkswagen II</u>").  Plaintiff Realtime Data, LLC d/b/a IXO ("Realtime") has its principal place of business in the Southern District of New York.  It has acknowledged that all of its evidence and witnesses (including many non-party witnesses) relevant to the asserted patents are located in, or within 100 miles of, New York City; *none* of Realtime's evidence or witnesses is located in this District or otherwise in Texas.

Defendants also have no connection to this District.  All four of the moving Defendants have their principal offices located in the Southern District of New York or a state adjoining New York; none of the Defendants has an office within this District.  In addition, the majority of the Defendants' documents are located in, or close to, New York City; none of the Defendants has any documents in this District.  Last, while Realtime's woefully insufficient description of the allegedly infringing products – "data compression products and/or services" – fails to provide *any* meaningful notice as to which of the Defendants' products allegedly infringe Realtime's

patents,[1] the Defendants believe that the vast majority of their witnesses are located at or near their principal places of business in or close to the Southern District of New York; none of the Defendants has any witnesses in this District or otherwise in Texas.

When considering the two other substantively similar lawsuits that Realtime filed in this Court contemporaneously with this action,[2] the lack of a Texas connection – and the prominent New York connection – is even more apparent.  In those two actions, Realtime sued a total of 35 defendants making identical infringement allegations concerning the same four patents.  Not one of the 35 defendants' principal places of business is located within this District; conversely, 27 of the defendants' principal places of business are in New York or adjoining states.  In fact, several of those defendants are seeking transfer to the Southern District of New York as well, arguing that the balance of conveniences weighs heavily in favor of transfer.[3]

The only conceivable connection to this District is the presence of another pending action that Realtime commenced in this Court against a completely different set of defendants that involves two of the same patents that are at issue in this action.[4]  But because Realtime decided not to assert the overlapping patents in the upcoming trial in that action, those patents are no longer at issue.  Thus, the pendency of that action does not militate against transferring this action to the Southern District of New York.

---

[1]  On November 9, 2009, all of the defendants in this action filed a Motion to Dismiss Realtime's Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

[2]  The two other actions are *Realtime Data, LLC D/B/A IXO v. CME Group, Inc., et al.*, No. 6:09-cv-327-LED (the "Exchange Action") (a copy of the amended complaint from the Exchange Action is attached to the Declaration of Willem G. Schuurman ("Schuurman Decl.") as Exhibit 2); and *Realtime Data, LLC D/B/A IXO v. Morgan Stanley, et al.*, No. 6:09-cv-326-LED (the "Bank Action," and collectively, with the Exchange Action, the "Additional Texas Actions") (a copy of the amended complaint from the Bank Action is attached to the Schuurman Decl. as Exhibit 3).

[3]  On November 17, 2009, ten of the defendants in the Exchange Action filed a Motion to Transfer Venue to the Southern District of New York, and Defendants have been informed that several of the defendants in the Bank Action will be moving to transfer to the Southern District of New York as well.  To avoid duplicative briefing, the Defendants hereby incorporate the defendants' arguments in the Additional Texas Actions in support of their Motions to Transfer Venue.

[4]  The other pending action is *Realtime Data, LLC D/B/A/ IXO v. Packeteer, Inc., et al.*, No. 6:08-cv-00144-LED/JDL (the "Packeteer Action").

Finally, this Court's denial of a motion to transfer venue to the Northern District of California in the Packeteer Action should be given little weight because it is distinguishable for several reasons. First, unlike the Packeteer Action, the documentary evidence and witnesses here are not located across the country and the globe – they are chiefly in or near New York City. Second, the Defendants here promptly moved to transfer within less than two weeks of filing their motion to dismiss; they did not wait nine months after infringement and invalidity contentions, discovery and mediation had occurred. Third, this Court's time to trial is less than four months quicker than the Southern District of New York, not more than one year quicker like the transferee district in the Packeteer Action. Considering that Realtime took more than seven weeks to serve some of the Defendants and has still failed to identify the allegedly infringing products or services, a matter of months is of no consequence.

Accordingly, unlike the Packeteer Action, the majority of the relevant factors here weigh heavily in favor of transferring this action to the Southern District of New York.

## II. <u>BACKGROUND</u>

### A. The Plaintiff and Majority of Defendants are New York Companies

Realtime filed its amended complaint on July 27, 2009 (the "Complaint," attached to Schuurman Decl. as Ex. 1). None of the parties named in the Complaint is located within this District. The Complaint alleges that Realtime, Thomson and Bloomberg have their principal places of business located within the Southern District of New York (Schuurman Decl. Ex. 1 at ¶¶ 1-3), and that Factset and IDCO's principal places of business are located in states that are adjacent to New York (id. ¶ 4-5). In fact, FactSet's principal place of business is located in a suburb of New York City within 100 miles of the Southern District of New York. (Declaration of Rachel R. Stern ("Stern Decl.") ¶ 3.) FactSet also has a major presence in New York City, as it maintains an office there with 384 employees. (Id. ¶ 4.) Only Defendant Penson is alleged to

be located in Texas, although its office is not within this District.  (Schuurman Decl. Ex. 1 ¶ 6.)

Nexa is alleged to have its principal place of business located in California.   (Id. ¶ 7.)

Bloomberg has two news bureau offices and two node sites in Texas, although they are not

within this District.  (Declaration of Adrien Rios ("Rios Decl.") ¶ 5.)

Realtime has not alleged that it presently manufactures, sells or offers to sell any data

compression products anywhere in the world, let alone in Texas.   In addition, Realtime's

allegations concerning certain of the Defendants' contacts with this District (Schuurman Decl.

Ex. 1 ¶ 2) are incorrect.  For example, Thomson does not have a Texas office,[5] is not registered

to do business in Texas and does not have a registered agent in Texas.  (Declaration of Carolyn

Blankenship ("Blankenship Decl.") ¶ 2.)

### B. The Majority of Defendants in the Additional Texas Actions are also New York Companies

Contemporaneously with filing this action, Realtime filed the Additional Texas Actions

alleging that 35 defendants infringed the same four patents[6] that are at issue in this action.[7]

Realtime's infringement allegations in this action and the Additional Texas Actions are

substantively identical.  (Compare Schuurman Ex. 1 ¶ 19 with id. Ex. 2 ¶ 27 and id. Ex. 3 ¶ 34.)

In sum, 27 of the 35 defendants in the Additional Texas Actions have their principal places of

business in New York or an adjoining state.  (Id. Ex. 2 ¶¶ 2-15; id. Ex. 3 ¶¶ 2-22.)  No defendant

in the Additional Texas Actions has a principal office within this District.

---

[5]     While certain Thomson affiliates have Texas offices, these affiliates are not named as defendants in this action and their offices are not located within this District.

[6]     U.S. Patent Nos. (i) 6,624,761 (the "761 Patent"); (ii) 7,161,506 (the "506 Patent"); (iii) 7,400,274 (the "274 Patent"); and (iv) 7,417,568 (the "568 Patent") (collectively, the "Patents").

[7]     On July 24, 2009, the Chicago Board Options Exchange, Inc. ("CBOE") initiated a declaratory judgment action against Realtime in the Northern District of Illinois.   Three days later, Realtime amended its complaint in the Exchange action to name CBOE as a Defendant.  In CBOE's Illinois action, CBOE seeks a declaration that the Patents are invalid and/or not infringed.  On November 9, 2009, Realtime moved to dismiss the complaint in the Illinois action for lack of personal jurisdiction.  That motion is still pending.

**C.    Nearly All of the Defendants' Witnesses and Evidence Are Located in New York**

Based on Realtime's vague and conclusory infringement allegations, the Defendants cannot determine which of their products or services are allegedly infringing the Patents. Nonetheless, the Defendants are not aware of any records that are likely to be relevant to this suit that are located in or near Texas; conversely, the majority of the Defendants' relevant documents are located in or close to New York.   (Blankenship Decl. ¶ 3; Rios Decl. ¶ 4; Stern Decl. ¶¶ 7-8; Declaration of Christine Sampson ("Sampson Decl.") ¶¶ 3-4.)   In addition, the majority of the Defendants' witnesses are located in or near New York City.  (See, e.g., Blankenship Decl. ¶ 4; Rios Decl. ¶ 6; Stern Decl. ¶ 10; Sampson Decl. ¶ 3.)  The Defendants have not identified any relevant witnesses located in this District or elsewhere in Texas.

**D.    Realtime's Witnesses and Documents are Located in New York**

Realtime's witnesses and documents are also located in New York.  For example, in its Initial Disclosures in the Packeteer Action, Realtime identified six individuals with knowledge or discoverable information that may be used to support its claims.  (Realtime's Initial Disclosures, attached to the Schuurman Decl. as Ex. 5, at 4-7.)   All six are located in New York.   (Id.) Similarly, in Realtime's Identification of Trial Witnesses (attached to the Schuurman Decl. as Ex. 6), Realtime identified three fact witnesses that it "will" call at trial, all of whom are located in New York.  (Schuurman Decl. Ex. 6 at 2.)  Realtime also identified five fact witnesses who it "may" call to testify at trial.   (Id.)  Four of these witnesses (Mr. Steven Bo, Mr. Richard Tashjian, Mr. Carltone and Mr. Paul Fred Pickel) are located in New York, and based on an Internet search, the last witness (Mr. John Buck) is also located in New York.  Finally, when the location of its documents was raised as an issue in the Packeteer Action, Realtime stated unequivocally that all of its documents are located in New York.  (See Realtime's opposition to

certain of the defendants' motion to transfer in the Packeteer Action, relevant pages of which are attached to the Schuurman Decl. as Ex. 7, at 3, 6, 9; see also id. Ex. 5 at 5-8.).

### E.     The Packeteer Action Has Not Centered on the Overlapping Patents

The 506 and 761 patents have not been the principal focus of the Packeteer Action. Although a *Markman* hearing has been held and an initial claim construction has been issued in the Packeteer Action, Realtime is not asserting either patent in the upcoming trial.   (See Realtime's Notice of Patents and Claims to be Tried, attached to the Schuurman Decl. as Ex. 4.) Moreover, the 506 and 761 patents are currently being reexamined by the United States Patent and Trademark Office, which should at least lead to changes in the claim language and scope.

### F.     The New York Action

On September 11, 2009, more than seven weeks after Realtime filed this action but before Realtime attempted to serve Thomson, Thomson filed an action against Realtime in the Southern District of New York seeking a declaration that the asserted Patents are not valid (the "New York Action").   On October 15, 2009, the Southern District of New York *sua sponte* stayed the New York Action pending the resolution of all of the defendants' motion to dismiss or transfer this action to the Southern District of New York.  (A copy of the Order is attached to the Schuurman Decl. as Ex. 8.)  The Southern District of New York did not dismiss the action and did not disagree that New York is the more convenient forum for this action.  Instead, it deferred to this Court to determine whether the Southern District of New York would be a more convenient forum.

## III.   ARGUMENT

### A.     Standard for Transferring Cases

Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold question when analyzing a case's eligibility for Section 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." In re Volkswagen of Am., Inc., 371 F.3d 201, 203 (5th Cir. 2004) ("In re Volkswagen I").

Once the threshold issue is satisfied, courts analyze private and public interest factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. See Fujitsu Limited v. Tellabs, Inc., 6:08 CV 22 Patent Case, 2009 U.S. Dist. LEXIS 58288, *4 (E.D. Tex. July 7, 2009) (Davis, J.). The United States Court of Appeals for the Fifth Circuit recently provided a thorough analysis of the relevant private and public interest factors in In re Volkswagen of Am. Inc., 545 F.3d 304 (5th Cir. 2008) ("In re Volkswagen II"); see also In re TS Tech USA Corp., 551 F.3d 1315, 1319 (Fed. Cir. 2008).

> The four private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. Volkswagen II, 545 F.3d at 315.

> The four public factors are: (1) administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws in the application of foreign law." Id.

A plaintiff's choice of venue is not a factor in the transfer analysis, although it contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor. Id. at 314-315. Once "the movant demonstrates that the transferee venue is clearly more convenient . . . it has shown good cause and the district court should therefore grant the transfer." Id.

**B.      This Case "Could Have Been Filed" in
         the Southern District of New York**

Realtime cannot dispute that this case could have been filed in the Southern District of
New York.  Venue in a patent case is proper in the judicial district "where the defendant resides"
or "has a regular and established place of business."  28 U.S.C § 1400.  For the purposes of
venue, a corporation "resides" in any district in which it was subject to personal jurisdiction at
the time the action was filed.  28 U.S.C. § 1391(c).  Here, Realtime alleges that Defendants
Thomson and Bloomberg have their principal places of business in the Southern District of New
York.  (Schuurman Decl. Ex. 1 ¶ 1.)  Similarly, both Factset and IDCO have offices in the
Southern District of New York.  (Stern Decl. ¶ 4; Sampson Decl. ¶ 2.)  Last, non-movant Penson
has contacts with New York directly and through at least one of its subsidiaries, and non-movant
Nexa has contacts with New York working with and providing services to at least one customer
in New York.  Thus, the threshold issue has been satisfied.

**C.      *All* of the Private Interest Factors
         Weigh Heavily in Favor of Transfer**

**1.      The Relative Ease of Access to Sources of Proof
         Weighs in Favor of Transfer**

The Fifth Circuit recently held that "the sources of proof requirement is a meaningful
factor in the [transfer] analysis."  In re Volkswagen II, 545 F.3d at 316.  Moreover, federal
district courts in Texas have observed that "intellectual property infringement suits often focus
on the activities of the alleged infringer, its employees, and its documents; therefore the location
of the alleged infringer's principal place of business is often the most critical and controlling
consideration in adjudicating transfer of venue motions."  Houston Trial Reports, Inc. v. LRP
Pubs., Inc., 85 F. Supp. 2d 663, 668 (S.D.Tex. 1999) (internal citations and quotations omitted);

<u>Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.</u>, 512 F. Supp. 1039, 1044 (S.D.Tex 2007) (same).

This factor weighs heavily in favor of transfer because the vast majority of the Defendants' documents, and *all* of Realtime's documents, are located in or close to New York. The Defendants' relevant documents are predominately located at their principal places of business in or close to New York City; none of the Defendants has identified any relevant documents within this District or otherwise in Texas.  (Blankenship Decl. ¶ 3; Rios Decl. ¶ 4; Stern Decl. ¶¶ 7-8; Sampson Decl. ¶¶ 3-4.)  Similarly, Realtime has admitted that *all* of its sources of proof are located in New York, and none of its proof is located in Texas.  For example, in the Packeteer Action, Realtime stated unequivocally to this Court that all of its relevant documents are located in New York:

> All of the patents-in-suit are the work of [Realtime's] co-founder James Fallon, a resident of New York.  Prototypes of the products that were built and demonstrated to many companies still exist and are located in New York, New York.  Source code designed by the company is located in New York, New York.
>
> Realtime Data's documents originate from New York, New York.
>
> Realtime [] developed its patented technology, prosecuted its patents, and pursued its research and development business model in or around the New York, New York area.

(Schuurman Decl. Ex. 7 at 3, 6, 9.)

In light of these admissions, and Defendants' Declarations showing that nearly all of the relevant documents and many data centers for the majority of the Defendants are located within the Southern District of New York, or certainly much closer to the Southern District of New York than this District, this factor militates strongly in favor of transfer.

**2.     The Availability of Compulsory Process to Secure
the Attendance of Witnesses Weighs in Favor of Transfer**

The availability of compulsory process to secure the attendance of non-party witnesses weighs more heavily in favor of transfer when more third-party witnesses reside within the transferee venue.  In re Volkswagen II, 545 F.3d at 316.  This factor will weigh the heaviest in favor of transfer when the transferee forum has "absolute subpoena power" over all relevant and material third-party witnesses.  Id.

This factor also weighs in favor of transfer as this Court does not have subpoena power over *any* of Defendants' or Realtime's witnesses, while the Southern District of New York will have subpoena power over many of the non-party witnesses.  For example, two of Thomson's non-party witnesses (Ms. Soza and Mr. Wagner) (Blankenship Decl. ¶ 4) and one of Factset's non-party witnesses (Mr. Cham) (Stern Decl. ¶ 11) are located no more than 41 miles of the Southern District of New York.[8]  While Factset has listed other non-party witnesses who are located on the west coast, no Defendant has listed any non-party witness who is located in this District or even near Texas.  Thus, this Court will not have subpoena power over *any* of the Defendants' non-party witness.

Similarly, *all* of Realtime's non-party witnesses are located in the Southern District of New York.  In the Packeteer Action, Realtime identified Richard Tashjian, Esq. as its outside counsel who has relevant information concerning two of the Patents (Schuurman Decl. Ex. 5 at 5-6), and Steven Bo as a consultant who participated in the development of software powering Realtime's data compression systems (id. at 6).  Each of these individuals is located no more than 30 miles from the Southern District of New York.  Moreover, two of the named inventors of the 274 and 568 patents – Mr. Melone and Mr. Pickel – are also located no more than 38 miles

---

[8]     See Schuurman Decl. Ex. 11 for a printout of directions showing the distance between the non-party witnesses' offices and the Southern District of New York.

from the Southern District of New York.[9]   And the two attorneys who prosecuted the 761 and

501 patents – Frank V. DeRosa, Esq. and Jeffrey Mullen, Esq. – are also located no more than 31

miles from the Southern District of New York.[10]   In sum, at least three of Defendants', and all

six of Realtime's, non-party witnesses who possess information regarding Realtime's inventions

are indisputably within the Southern District of New York's absolute subpoena power.

In addition, third-party discovery in the Packeteer Action concerning Realtime and its

patents was largely conducted in New York and will likely be relevant to this case.   The

defendants in the Packeteer Action served at least eight subpoenas on non-party witnesses in

New York, including Realtime's former patent prosecution attorneys and vendors.[11]   This

discovery sought wide-ranging information about Realtime, its data compression products and

the prosecution of its patents.   It is likely that this same multiple third-party testimony will be

important in this action as well.   Because the Southern District of New York has absolute

subpoena power over all of these witnesses, the availability of process to compel attendance of

witnesses weighs strongly in favor of transfer.   See In re Genentech, Inc., 566 F.3d 1338, 1345

(Fed. Cir. 2009) ("The fact that the transferee venue is a venue with usable subpoena power here

weighs in favor of transfer, and not only slightly.").

### 3.   The Cost of Attendance for Willing Witnesses Weighs in Favor of Transfer

"The relative convenience to the witnesses is often recognized as the most important

factor under § 1404(a)."   Amini Innovation Corp., 512 F. Supp. 2d at 1043 (internal quotations

and citations omitted).   In In re Volkswagen I, the Fifth Circuit set a 100-mile rule, holding that

when the distance between the existing venue and a proposed venue is more than 100 miles, "the

---

[9]      See defendants' motion to transfer venue in the Exchange Case, attached as Ex. 12 to the Schuurman Decl., at 4.

[10]     See id.

[11]     These subpoenas are collectively attached as Ex. 9 to the Schuurman Decl.

factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." 371 F.3d at 204-05. To that end, the Court held that it is an "obvious conclusion" that it is more convenient for witnesses to testify closer to home, and that

> [a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

Id. at 205; see also In re Genentech, Inc., 566 F.3d at 1345 (finding that this Court erred in determining that the conveniences of the witnesses did not "weigh substantially in favor of transfer" where a "substantial number of material witnesses reside[d] within the transferee venue" and the transferee State.)

This factor strongly favors transfer because a majority of the Defendants', and all of Realtime's, witnesses are located in or close to New York. For example, five of Thomson's seven witnesses are located in or near New York (Blankenship Decl. ¶ 4); all seven of Bloomberg's witnesses are in New York (Rios Decl. ¶ 6); six of Factset's fourteen witnesses are located in New York or an adjoining state (Stern Decl. ¶¶ 10-11); and all of IDCO's "employees" and "officers" relevant to this dispute are located on the north eastern coasts (Sampson Decl. ¶ 3.) Importantly, none of the Defendants' witnesses is located in or near Texas. Similarly, *all* of Realtime's witnesses are located in New York. See supra at 5-6. If this action is not transferred to the Southern District of New York, all of these witnesses will incur significant travel, lodging and meal expenses, as well as substantial inconvenience in traveling 1,300 miles for trial, especially when the majority of them are located within 38 miles of the Southern District of New York. Thus, because a "substantial number" of the parties' material witnesses are located in or close to New York, this factor weighs strongly in favor of transfer. In re Genentech, Inc., 566 F.3d at 1345); see also Fifth Generation Computer Corp. v. International

Business Machines Corp., No. 9:08-CV-205, 2009 U.S. Dist. LEXIS 12502, at *2 (E.D. Tex. Feb. 17, 2009) (granting motion to transfer to the Southern District of New York where "[m]ultiple potential witnesses are located in or near the Southern District of New York").

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive also Weigh in Favor of Transfer

The Fifth Circuit has held that the possibility of delay and prejudice is relevant in deciding the propriety of a motion to transfer venue only in rare circumstances and when circumstances are established by clear and convincing evidence.  See In re: Horeshoe Entm't, 337 F.3d 429, 434 (5th Cir. 2003).  This case is at its earliest stages, as there has been no discovery or claim construction, and the only substantive pleadings that have been filed since the Complaint was all of the defendants' motion to dismiss.  Moreover, the presence of a pending action in the Southern District of New York between Realtime and Thomson concerning the same Patents militates in favor of this Court transferring this action to the Southern District of New York.  See Houston Trial Reports, 85 F. Supp. 2d at 671 (holding that the presence of a similar pending case in another district court supports transfer of this case to that district.)

In addition, the pendency of the Packeteer Action does not weigh in favor of this Court maintaining this action.  This case involves entirely different defendants, different products and two distinct asserted patents – the 568 and 274 Patents – which come from a different patent family and will require substantial additional time and effort for any court to analyze and construe.  Moreover, the Packeteer Action has not focused on the two overlapping patents, as Realtime is not asserting either patent during the upcoming trial.  (See Schuurman Decl. Ex. 4.) Thus, because no delay or prejudice would result if this case is transferred to the Southern District of New York, this factor favors transfer.

**D.      On Balance, the Public Interest Factors Weigh in Favor of Transfer**

   **1.      The Local Interest in Having Localized
            Interests Decided at Home Favors Transfer**

This Court recently concluded that "the mere fact that an accused product is available in this district is not a particularized interest that weighs against transfer." Aten Int'l Co. v. Emine Tech. Co., 2:08-CV 253, 2009 U.S. Dist. LEXIS 53764, at *34 (E.D. Tex. June 25, 2009) (Davis, J.).  Instead, this Court held that because one of the defendants identified the transferee venue as the principal place of business of both one of the defendants and one of the plaintiffs, the transferee district had "a particularized local interest." Id.; accord Fujitsu Limited, 2009 U.S. Dist. LEXIS 58288 at *17 (holding that because products are designed and developed in the transferee venue "and Defendants' principal places of business are located within the [transferee district], that district has a particularized local interest in the dispute").

This case is analogous to Aten International and Fujitsu.  As in those cases, both Reatime's and the majority of the Defendants' principal offices are located in or close to the Southern District of New York.  Conversely, this action has virtually *no* contacts with this District.  For example, Realtime's allegations that Defendants "make[], sell[], offer[] for sale, and/or use[] data compression products and services in the United States and Texas" (Schuurman Decl. Ex. 1 ¶¶ 2-7) fail to establish a local interest that weighs against transfer.  See Aten International Co. 2009 U.S. Dist. LEXIS at *34; see also TS Tech USA Corp., 551 F.3d 1315, 1318 (Fed. Cir. 2008) (finding where a product is sold throughout the United States, no venue has any more or less of a meaningful connection than any other due to sales in a particular venue).  Moreover, with respect to at least one Defendant, Realtime's Texas connection allegations (Schuurman Decl. Ex. 1 ¶ 2) are factually incorrect, as Thomson has no Texas office and is not licensed to do business in Texas.  (Blankenship Decl. ¶ 2.)  Thus, other than the

purported sales of the alleged unspecified infringing products in Texas and throughout the rest of the United States, there is *no* connection between Realtime's claims against the Defendants and this District.  Thus, the local interests factor favors transfer.

### 2.    The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral.  First, with respect to the administrative difficulties flowing from court congestion factor, Realtime submitted a recent study in the Packeteer Action concerning the time-to-trial for patent cases in the district courts.  (Schuurman Decl. Ex 10.)  The study shows that the average time to trial in this District is 1.79 years; the average time to trial in the Southern District of New York is 2.10 years.  (Id.)  This less than four-month difference renders this factor neutral, especially considering that Realtime waited more than seven weeks before serving some of the Defendants, and that Realtime has yet to identify which of the Defendants' products allegedly infringe.

Second, the familiarity of the forum with the governing law factor is also neutral because, although this forum is well-versed in federal patent law, "[t]here is no doubt that any court in New York to which this case is assigned will be able to deal with issues of federal patent law." Fifth Generation Computer Corp., 2009 U.S. Dist. LEXIS at *17.  To that end, the factor concerning potential conflicts of law issues is neutral because federal patent law will apply to all of the issues in this case.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court transfer this action to the Southern District of New York.

Dated:  November 20, 2009

Respectfully submitted,

  /s/ Willem G. Schuurman
Willem G. Schuurman (TX Bar No. 17855200)
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Tel: (512) 542-8663
Fax: (512) 236-3422
bschuurman@velaw.com

Constance Huttner
VINSON & ELKINS L.L.P.
666 Fifth Avenue, 26th Floor
New York, New York 10103
Tel:  (212) 237-0000
Fax:  (212) 237-0100

*Attorneys for Thomson Reuters Corp.*

  /s/ S. Calvin Capshaw (with permission)
S. Calvin Capshaw (TX Bar No. 03783900)
Elizabeth L. DeRieux (TX Bar No. 05770585)
D. Jeffrey Rambin (TX Bar No. 00791478)
CAPSHAW DeRIEUX, L.L.P.
1127 Judson Road, Suite 220
P.O. Box 3999
Longview, Texas 75606-3999
Phone:  (903) 236-9800
Facsimile:  (903) 236-8787
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com
Email: jrambin@capshawlaw.com

*Of Counsel*

John M. DiMatteo
jdimatteo@willkie.com
Ketan Pastakia
kpastakia@willkie.com
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue

16

New York, NY 10019
(212) 728-8000 Phone
(212) 728-8111 Fax

*Attorneys for Bloomberg, L.P.*


  /s/ Elizabeth L. DeRieux (with permission)
Elizabeth L. DeRieux (TX Bar No. 05770585)
CAPSHAW DERIEUX, LLP
1127 Judson Road, Suite 220
P.O. Box 3999
Longview, Texas 75606
Tel:  (903) 236-9800
Fax:  (903) 236-8787
ederieux@capshawlaw.com

Benjamin W. Hattenbach (*pro hac vice*)
Mark A. Kressel (*pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Tel:  (310) 277-1010
Fax:  (310) 203-7199
bhattenbach@irell.com
mkressel@irell.com

*Attorneys for Interactive Data Corporation*


  /s/ Jennifer P. Ainsworth (with permission)
Jennifer P. Ainsworth (TX Bar No. 00784720)
WILSON, ROBERTSON & CORNELIUS, P.C.
900 ESE Loop 323, Suite 400
Tyler, Texas 75701
Tel: (903) 509-5011
Fax: (903) 509-5092
jainsworth@wilsonlawfirm.com

*Attorneys for FactSet Research Systems, Inc.*

17

## <u>CERTIFICATE OF CONFERENCE</u>

I HEREBY CERTIFY that in compliance with the requirements of Local Rule CV-7(h),

counsel for Defendant Thomson Reuters Corporation met and conferred with counsel for

plaintiff, Realtime Data LLC D/B/A IXO, regarding this motion and plaintiff's counsel indicated

that this motion would be opposed.

Dated:  November 20, 2009                    /s/ Willem G. Schuurman
                                        WILLEM G. SCHUURMAN

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 20th day of November, 2009.

*/s/* Willem G. Schuurman
Willem G. Schuurman

19