IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA, LLC d/b/a/ IXO, § § | | |
| Plaintiff, § § | | Civil Action No. 6:09cv326-LED-JDL |
| v. § § | | JURY TRIAL DEMANDED |
| MORGAN STANLEY, ET AL., § § | | |
| Defendants. § | | |
| REALTIME DATA, LLC d/b/a/ IXO, § § | | |
| Plaintiff, § § | | Civil Action No. 6:09cv327-LED-JDL |
| v. § § | | JURY TRIAL DEMANDED |
| CME GROUP, INC., ET AL., § § | | |
| Defendants. § | | |
| REALTIME DATA, LLC d/b/a/ IXO, § § | | |
| Plaintiff, § § | | Civil Action No. 6:09cv333-LED-JDL |
| v. § § | | JURY TRIAL DEMANDED |
| THOMSON REUTERS CORP., ET AL., § § | | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is (1) Defendants Morgan Stanley, Morgan Stanley & Co. Incorporated, J.P. Morgan Chase & Co., J.P. Morgan Securities, Inc., J.P. Morgan Clearing Corp., The Bank of New

York Mellon Corporation, BNY ConvergEx Group, LLC, BNY ConvergEx Execution Solutions, LLC, Credit Suisse Holdings (USA), Inc., Credit Suisse Securities (USA) LLC, The Goldman Sachs Group, Inc., Goldman, Sachs & Co., Goldman Sachs Execution & Clearing, L.P., SWS Group, Inc., and Southwest Securities, Inc.'s (collectively, "the Morgan Stanley Defendants") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (6:09cv326, Doc. No. 62) ("Morgan Stanley Motion"); (2) Defendants BATS Trading, Inc., International Securities Exchange, NASDAQ OMX Group, Inc., NASDAQ OMX PHLX, Inc., NYSE Euronext, NYSE ARCA, Inc., NYSE AMEX LLC, Securities Industry Automation Corp., Boston Options Exchange Group LLC, Options Price Reporting Authority's (collectively, "the BATS Defendants")[1] Motion to Transfer Venue to the United States District Court for the Southern District of New York (6:09cv327, Doc. No. 79) ("BATS Motion"); and (3) Defendants Thomson Reuters Corp., Bloomberg L.P., Factsheet Research Systems, Inc., and Interactive Data Corporation's (collectively, "the Thompson Reuters Defendants") Motion to Transfer Venue Pursuant to 28 U.S.C. 1404(a) (6:09cv333, Doc. No. 41) ("Thompson Reuters Motion").[2] Defendants have each also filed respective replies. Plaintiff Realtime Data, LLC d/b/a/ IXO ("Realtime") opposed each of Defendants' Motion with a Consolidated Response (6:09cv326, Doc. No. 85) (6:09cv327, Doc. No. 121) (6:09cv333, Doc. No. 60) (collectively, "Realtime Response") (an identical document was filed in response to all three Motions to transfer venue), as well as a consolidated Sur-reply (6:09cv326, Doc. No. 121).

The Court, having considered the venue motions and the arguments of counsel, hereby

---

[1] Defendants Chicago Board Options Exchange Group LLC, the CME Group, the New York Mercantile Exchange, Inc., and the Board of Trade of the City of Chicago neither join nor oppose this Motion to Transfer Venue. BATS MOTION at 2, n.2.

[2] Defendants Penson Worldwide, Inc. and Nexa Technologies, Inc. neither join nor oppose this Motion to Transfer Venue. THOMSPON REUTERS MOTION at 1.

**DENIES** the motions to transfer venue to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Because the issues are substantially the same, the Court issues this Memorandum Opinion and Order for all three cases.

## BACKGROUND

On July 22, 2009, Plaintiff Realtime filed Complaints against the Morgan Stanley Defendants and the BATS Defendants. On July 23, 2009, Realtime filed a Complaint against the Thompson Reuters Defendants. In all three cases, Realtime alleges infringement of U.S. Patent Nos. 6,624,761 ("the '761 Patent"), 7,161,506 ("the '506 patent"), 7,400,274 ("the '274 patent") and 7,417,568 ("the '568 patent"). Each Group of Defendants has respectively filed a Motion to Transfer Venue.

*The Packeteer Action*

Realtime previously brought suit in a multi-defendant patent infringement action against different defendants in this district ("the *Packeteer* action").[3] In the *Packeteer* action, Realtime asserted seven patents against twelve defendants, consisting of both manufacturer defendants and their respective customers. Two of the patents asserted in the instant cases were previously asserted in the *Packeteer* action, the '761 and the '506 patents. In that case, the Court issued a sixty-one page Claim Construction Memorandum Opinion and Order that construed terms from the '761 and '506 patents. (6:08cv144, Doc. No. 371). Following claim construction, the Court ordered Realtime to assert one patent against each manufacturing defendant (6:08cv144, Doc. No. 432). Following its election, the '761 and the '506 patents were not litigated in pre-trial proceedings,[4] but the Court

---

[3] *Realtime Data, LLC D/B/A IXO v. Packeteer et al.* was adjudicated as Civil Action No. 6:08-cv-144. The undersigned handled all pre-trial proceedings and the Honorable Leonard E. Davis issued a Final Judgment in this case after Realtime reached settlement agreements with all defendants.

[4] These patents were held in abeyance with other Realtime patents to be asserted following the completion of a jury trial scheduled for January 2010.

became familiar with the underlying technology of data compression[5] through the ongoing litigation of related Realtime patents: U.S. Patent Nos. 6,601,104, 7,321,937, and 7,352,300. (6:08cv144, Doc. No. 435). On the eve of trial, the parties entered into settlement agreements on all claims for the seven asserted patents.

## THE PARTIES' CONTENTIONS

*Defendants' Position*

All groups of Defendants in the pending cases make arguments for transfer to the Southern District of New York on similar grounds. Defendants specifically argue that the *Packeteer* action that was handled by this Court does not weigh against transfer. MORGAN STANLEY MOTION at 2–3; BATS MOTION at 13; THOMPSON REUTERS MOTION at 2, 6. In evaluating the relevance of the *Packeteer* action, Defendants emphasize that each of the three instant cases involves an entirely different set of Defendants than those who were involved in the claim construction and pre-trial proceedings in the earlier case. Defendants in the three pending cases also argue that the two patents which overlap with the *Packeteer* action, the '761 and '506 patents, are not significant when weighing the public interest factors, because while they were the subject of an earlier claim construction opinion, Realtime elected not to assert the overlapping patents at trial. MORGAN STANLEY MOTION at 2–3; BATS MOTION at 13; THOMPSON REUTERS MOTION at 6. Defendants further suggest that because these patents are being reexamined by the United States Patent and Trademark Office, that the scope of the '761 and/or '506 patents could potentially be amended, rendering the *Packeteer* claim construction opinion inapplicable. *Id*.

---

[5] All of the patents asserted in the *Packeteer* action, as well as the patents asserted in the three cases currently pending in this district, relate to the real-time compression of data streams.

Defendants further raise procedural arguments that are specifically tailored to their individuals cases. For example, the Morgan Stanley and BATS Defendants raise jurisdictional arguments, contending that pending Motions to Dismiss for Lack of Personal Jurisdiction raised by individual defendants[6] are best resolved by transfer to a court where personal jurisdiction cannot be challenged. MORGAN STANLEY MOTION at 13–14; BATS MOTION at 12–13 (suggesting that transfer would preemptively resolve jurisdictional disputes and allow coordination or consolidation with a declaratory action pending in the Southern District of New York). Additionally, a subset of defendants in the case brought against the BATS Defendants, have filed a declaratory action against Realtime in the Northern District of Illinois,[7] and the Thompson Reuters Corporation has filed a declaratory action against Realtime in the Southern District of New York.[8] All Defendants, regardless of their actual involvement in these declaratory actions, argue that the presence of a similar pending case in another district supports transfer to that district due to the possibility of delay.[9] MORGAN STANLEY MOTION at 13–14; THOMPSON REUTERS MOTION at 13.

---

[6] For example, in the action brought against the Morgan Stanley Defendants, BNY ConvergEx Group, LLC and BNY ConvergEX Execution Solutions LLC have filed a Motion to Dismiss for Lack of Personal Jurisdiction. In the action brought against the BATS Defendants, the Chicago Board Options Exchange, Inc. and the Board of Trade of the City of Chicago have filed a Motion to Dismiss alleging that these entities are not subject to personal jurisdiction in Texas.

[7] *Chicago Board of Exchange, Inc. v. Realtime Data, LLC*, No. 1:09-cv-04486 (N.D. Ill.) ("the Chicago action").

[8] *Thompson Reuters Corporation v. Realtime Data, LLC*, No. 2:09-cv-07868-RMB (S.D.N.Y.) ("the New York action").

[9] Defendants express concern as to delay because the District Judge assigned to the New York action considered letter briefs as to whether to dismiss the declaratory action against Realtime and deferred ruling on Realtime's request for dismissal until this Court ruled on the first-filed complaint regarding dismissal or transfer. MORGAN STANLEY MOTION at 13; BATS MOTION at 13, n.9. In short, the New York action is stayed until dismissal and/or transfer issues are resolved in this district. *Id.*

*Realtime's Position*

Realtime counters against Defendants' arguments by emphasizing that there is substantial overlap between the pending Realtime actions and the *Packeteer* action previously handled by this Court. REALTIME RESPONSE at 2. Realtime chronicles the Court's familiarity with data compression technologies and its previous involvement in the parties' "extensive pre-trial, summary judgment, and trial-related motion practice" in the *Packeteer* action. *Id*. Acknowledging that the '568 and '274 patents were not asserted in that action, Realtime represents that many of the terms in the '568 and '274 patents include terms that overlap with the '761 and '506 patents, some of which were initially construed in the *Packeteer* action. *Id*. In sum, Realtime does not agree that the Southern District of New York is a more convenient forum and Plaintiff advocates keeping the three instant actions in the same venue that previously considered the related arguments raised in the initial *Packeteer* action.

## **LEGAL STANDARD**

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Fifth and Federal Circuits have enunciated the standard to be used in deciding motions to transfer venue. *See In re Volkswagen of Am., Inc.* ("Volkswagen III"), 566 F.3d 1349 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) (applying the Fifth Circuit's en banc *Volkswagen II* decision to rulings on transfer motions out of this circuit); *In re Volkswagen of Am., Inc.* ("Volkswagen II"), 545 F.3d 304 (5th Cir. 2008) (en banc). The moving party must show "good cause," and this burden is satisfied "when the movant demonstrates that the transferee venue is clearly more convenient." *Volkswagen*

*II*, 545 F.3d at 314.

When determining whether the transfee venue is "clearly more convenient," the Federal Circuit has held that the "existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *Volkswagen III*, 566 F.3d at 1351. Courts in this district have consistently recognized the pronounced significance of judicial economy in patent cases, where judicial economy "is of particular importance and may be determinative even if the parties' considerations call for a different result." *Invitrogen Corp. v. General Electric Co.*, No. 6:08-cv-112, 2009 WL 331891, at *4 (E.D. Tex. Feb. 9, 2009) (quoting *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)); *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-cv-211, 2009 WL 440525 at *5–6 (E.D.Tex. Feb. 20, 2009) (denying transfer in four related infringement cases regarding the same patent to a district with related actions because the transferee forum had stayed the related actions and had not issued a claim construction ruling); *Zoltar Satellite Sys., Inc. v. LG Electronics*, 402 F. Supp. 2d 731, 736–37 (E.D. Tex. 2005) (transferring case to court which had previously construed three of the four patents at issue and presided over a three week jury trial). Where a court has before it a related lawsuit involving the same patent, the same plaintiff, and similar technology, a court's familiarity with the issues and facts is a consideration that weighs against transfer. *Medidea, LLC v. Zimmer Holdings, Inc.*, 2010 WL 796738, at *4 (E.D. Tex. March 8, 2010) (citing *In re Vtech Comm's*, 2010 WL 46332, at *2 (Fed. Cir. 2010)).

## DISCUSSION

A.   **The Overriding Public Interest in Judicial Economy**

The circumstances presented here, the existence of multiple lawsuits involving many of the

7

same issues, the completion of the claim construction process on identical patents in the *Packeteer* action, and the Court's familiarity with the technology at issue, are sufficient to override other factors that may support transfer to the Southern District of New York. Section 1404(a) requires that a court, in ruling on a motion to transfer, also take into account "the interest of justice." 28 U.S.C. §1404(a) (1994); *Volkswagen II*, 545 F.3d at 315. The Federal Circuit has similarly held that in patent cases, the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. V. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citations omitted). Consistent with the interest of justice, the Court approaches each motion to transfer on the particular facts of that case, but acknowledges the burden transfer creates for a plaintiff, witnesses, and the federal court system if a plaintiff is forced to pursue piecemeal litigation in different forums for interpretation of the same patents. *See Adrain v. Genetec Inc.*, No. 2:08-cv-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009). Where there are related lawsuits involving the same plaintiff, the same patent, and similar technology, transfer to another venue will "prevent the parties from taking advantage of the built-in efficiencies that result from having related cases before the same judge." *Medidea, LLC v. Zimmer Holdings, Inc.*, 2010 WL 796738, at *4 (E.D. Tex. March 8, 2010).

In light of these considerations, the instant Realtime lawsuits present an immediate concern regarding inconsistent claim construction. The undersigned has already presided over a comprehensive *Markman* process; motions for Summary Judgment on Indefiniteness, Invalidity, and Non-Infringement; *Daubert* expert motions, and Pre-Trial matters in a case involving similar, if not identical, technology. In the current cases, Realtime has chosen to assert the same four patents

against all Defendants in three separate lawsuits, while notably, terms from the '761 and '506 patents were previously construed by this Court. If the Court were to grant Defendants' request to transfer this case to the Southern District of New York, such a transfer might create both judicial inefficiency and increase the risk of inconsistent adjudication: "[A] court must consider the extent to which transfer will increase judicial economy and lower the risk of inconsistent adjudication. If the overlap between cases is substantial, then transferring the cases to a single judge may increase judicial economy and decrease the risk of inconsistent claim constructions." *J2 Global*, 2008 WL 5378010, at *5. In *Invitrogen*, the Court made the following observations:

> [T]ransfer is most appropriate when one court has extensive familiarity with the technology or the legal issues involved, a claim construction opinion has been prepared, and the cases involve the same or similar defendants with the same or similar products. *Zoltar*, 402 F.Supp.2d at 737; *Logan v. Hormel Foods Corp.*, No. 6:04-cv-211, 2004 WL 5216126, at *2 (E.D Tex. Aug. 25, 2004). On the other hand, if the overlap between cases is small then the risk of duplicative judicial work and inconsistent claim constructions is also small. This is particularly true when a court has had limited involvement with the case and the technology, no claim construction opinion has issued, and the cases involve different defendants with different products. *ConnecTel, LLC v. Cisco Systems, Inc.*, No. 2:04-cv-396, 2005 WL 366966, at *4 (E.D. Tex. Feb. 16, 2005); *Cummins-Allison Corp. v. Glory Ltd.*, No. 2:03-cv-358, 2004 WL 1635534, at *3 (E.D. Tex. May 26, 2004). At all times, the burden falls on the party seeking transfer to show that transfer is "clearly more convenient."*Volkswagen II*, 545 F.3d at 315.

*Invitrogen*, 2009 WL 331891, at *4 (finding judicial economy favored transfer where neither the patentee, nor accused infringer were residents of the forum, and the proposed transferee court had previously adjudicated several suits with the parties over three of the six asserted patents); *J2 Global*, 2008 WL 5378010, at *5.

The Court finds that overlap between the three instant cases and the adjudicated *Packeteer* action is substantial and weighs heavily in favor of having the later claim construction proceedings

9

for the Morgan Stanley Defendants (6:09cv326), the BATS Defendants (6:09cv327), and the Thompson Reuters Defendants (6:09cv33) handled by the same court that handled the *Packeteer* claim construction. As mentioned above, two of the asserted patents in these actions are identical to those construed in *Packeteer* and the data compression technology at issue in all of Realtime's cases deals with similar prior art and underlying technological concepts. Therefore, the Court concludes that any convenience gained in transferring these actions would be offset by the loss in judicial efficiency.

Defendants have not carried their burden in demonstrating that the overlap between the instant cases and the *Packeteer* action is insubstantial, nor have they shown that transfer would not lead to judicial inefficiency or the risk of inconsistent claim construction. To the contrary, the Court's extensive involvement with the technology and issues involved in the previous litigation is an overriding consideration when weighing the private and public interest factors. Keeping the current Realtime cases in this district not only eliminates the need for a different judge to become educated on the patents and the technology, but also preserves this Court's familiarity with the data compression technology underlying all three of the ongoing lawsuits. *See Invitrogen*, 2009 WL 331891, at *5; *see also Jackson v. Intel Corp.*, No. 2:08-cv-154, 2009 WL 749305, at *4 (E.D. Tex. March 19, 2009) (transferring case to the N.D. Ill. after agreeing with Intel that "the knowledge and experience that the judges of that district have developed with respect to the '900 patent cannot easily be replicated in this district without a substantial duplication of effort.").

### B.   Additional Considerations

Defendants concerns as to the immediacy of pending Motions to Dismiss for Lack of Personal Jurisdiction, as well as the impact this ruling has on declaratory actions pending in the

Northern District of Illinois and the Southern District of New York are unavailing. First, the Court is aware of the jurisdictional questions raised by individual Defendants in the *Morgan Stanley* and *CME* actions and will address these questions in due course. Second, as to the Chicago and New York declaratory actions, Defendants have failed to demonstrate that these courts have undertaken significant judicial efforts that justify transfer to the Southern District of New York.[10] In fact, the presence of these later-filed actions is a neutral consideration in the transfer analysis because the Southern District of New York has explicitly indicated that it "defers to the Eastern District of Texas" and will await the resolution of the Motion to Transfer in the Realtime case against the Thompson Reuters Defendants so as to avoid duplication of efforts. REALTIME RESPONSE at 14–15 (quoting SCHUURMAN DECL.). As such, the Court finds both the jurisdictional questions and the declaratory actions inconsequential to the instant transfer analysis.

## CONCLUSION

Accordingly, judicial economy warrants that the Defendants' Motions to Transfer to the Southern District of New York be **DENIED**.

**So ORDERED and SIGNED this 18th day of March, 2010.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

[10] Other than ordering a deferred ruling, there is no indication that Judge Berman had any substantial involvement with the later-filed New York action. Notably, he has not construed any of the Realtime patents. *See J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-cv-211, 2009 WL 440525 at *5 (E.D.Tex. Feb. 20, 2009).